**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

LUIS MANUAL GARCES,

Plaintiff,

v.

GAVIN NEWSOM, et al.,

Defendants.

No. 2:23-cv-1997-ICD-P

ORDER

and

FINDINGS AND RECOMMENDATIONS

Plaintiff, a prisoner proceeding pro se, brings this civil rights action pursuant to 42 U.S.C. § 1983. Pending before the Court is Defendants' motion to dismiss (ECF No. 29), along with a supporting request for judicial notice (ECF No. 29-1). Plaintiff has filed an opposition (ECF No. 34), and Defendants have filed a reply (ECF No. 37).

In considering a motion to dismiss, the Court must accept all allegations of material fact in the complaint as true. See Erickson v. Pardus, 551 U.S. 89, 93–94 (2007). The Court must also construe the alleged facts in the light most favorable to the plaintiff. See Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), overruled on other grounds by Harlow v. Fitzgerald, 457 U.S. 800 (1982); see also Hosp. Bldg. Co. v. Trustees of Rex Hosp., 425 U.S. 738, 740 (1976); Barnett v. Centoni, 31 F.3d 813, 816 (9th Cir. 1994) (per curiam). All ambiguities or doubts must be resolved in the plaintiff's favor. See Jenkins v. McKeithen, 395 U.S. 411, 421 (1969). However, legally conclusory statements not supported by actual factual allegations need not be accepted. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). In addition, pro se pleadings are held to a less stringent standard than those drafted by lawyers. See Haines v. Kerner, 404 U.S. 519, 520 (1972).

Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief" in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Bell Atl. Corp. v. Twombly, 550 U.S.

544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). However, to survive dismissal for failure to state a claim under Rule 12(b)(6), a complaint must contain more than "a formulaic recitation of the elements of a cause of action"; it must contain factual allegations sufficient "to raise a right to relief above the speculative level." Id. at 555–56. The complaint must contain "enough facts to state a claim to relief that is plausible on its face." Id. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. (quoting Twombly, 550 U.S. to 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility for entitlement to relief.'" Id. (quoting Twombly, 550 U.S. at 557).

In deciding a Rule 12(b)(6) motion, the Court generally may not consider materials outside the complaint and pleadings. See Cooper v. Pickett, 137 F.3d 616, 622 (9th Cir. 1998). The Court may, however, consider: (1) documents whose contents are alleged in or attached to the complaint and whose authenticity no party questions; (2) documents whose authenticity is not in question, and upon which the complaint necessarily relies, but which are not attached to the complaint, see Lee v. City of Los Angeles, 250 F.3d 668, 688 (9th Cir. 2001); and (3) documents and materials of which the court may take judicial notice, see Barron v. Reich, 13 F.3d 1370, 1377 (9th Cir. 1994).

Finally, leave to amend must be granted "[u]nless it is absolutely clear that no amendment can cure the defects." Lucas v. Dep't of Corr., 66 F.3d 245, 248 (9th Cir. 1995) (per curiam); see also Lopez v. Smith, 203 F.3d 1122, 1126 (9th Cir. 2000) (en banc).

## I. PLAINTIFF'S ALLEGATIONS

Plaintiff names the following as defendants: (1) Gavin Newsom, Governor of the State of California; (2) Ralph M. Diaz, former Secretary of the California Department of Corrections and Rehabilitation (CDCR); (3) Kathleen Allison, current Secretary of CDCR; (4) K. Seibel, current Assistant Secretary of CDCR; (5) C. Vanenburg, Correctional Counselor II Specialist; (6) B.

Moak, Chief of the Security Unit; (7) S. Smith, Warden; (8) Redmon, Correctional Counselor II; (9) J. Sherman, Correctional Counselor II; (10) Duran, Correctional Counselor I; (11) Quezada, Correctional Officer at California State Prison – Corcoran (CSPC); (12) Flores, Correctional Officer; (13) "Doctor," Chief ME; (14) Elias, Chief Psychiatrist; (15) Omeyer, Chief Psychiatrist; (16) Howard, Psychiatrist; (17) Frost, Psychiatrist; (18) Dr. Sao, Doctor; and (19) Dr. Deplar, Doctor. ECF No. 13 at 1–5.

Plaintiff asserts that since January 2008, he has suffered constant threats of stabbings from gang members at CSPC. See id. at 30. Plaintiff states he repeatedly requested a transfer to a facility away from these gang members but was denied. See id. He subsequently appealed this decision to the second level of review, requesting a transfer to High Desert State Prison. See id. Plaintiff alleges prison records were suppressed in July 2014 and that he was forced into new housing circumstances. See id. Later, Plaintiff was wrongly accused of fighting with his cellmate and transferred to a housing unit with an alleged gang member. See id. On February 23, 2015, Plaintiff was allegedly assaulted by this inmate. See id. In 2016, Plaintiff claims CDCR personnel knowingly moved him to a new housing assignment with another alleged gang member. See id. at 31. In 2017, Plaintiff requested a new housing assignment and was denied. See id. From 2017 through 2018, Plaintiff alleges Defendants engaged in a later-described conspiracy to hide information validating his safety concerns and CDCR's allegedly improper housing assignments. See id. at 31–32. Plaintiff asserts three claims for relief.

In his first claim, Plaintiff alleges deliberate indifference to prison conditions. See id. at 6. Plaintiff asserts that in 2018, Defendants Newsom and Diaz created an "Integration of Prisoners" policy. See id. Plaintiff claims this policy gave unsupervised authority to prison employees to use force by any means to enforce prison rules. See id.

Plaintiff asserts that around May 29, 2020, he was taken to the Departmental Review Board (DRB), where he asked not to be housed in the "enemies'" yard. See id. Plaintiff contends, however, that Defendant Seibel, acting under the policy, willfully took transfer control of him and forced him to be housed in the enemies' yard. See id.

Plaintiff asserts he was then transferred to Kern Valley State Prison, where the "Green

Wall's" unsupervised authority was implemented by Defendants Duran and Smith. See id. Plaintiff filed a Form 602 complaining of the risks he faced at Kern Valley State Prison. See id. After doing so, Plaintiff claims he was harassed by Defendant Duran who, with malice, willfully fabricated a false statement to prevent Plaintiff from continuing to complain about Defendants Allison and Seibel's deliberate indifference to his risk of harm. See id. Plaintiff asserts Defendants Duran and Quezada verbally harassed him and instigated other inmates to act against him with violence. See id.

Plaintiff further alleges that around April 5, 2021, Defendants Duran, Quezada, and another employee asked the program office sergeant to house Plaintiff in the enemies' block to harm him in retaliation for his complaints. See id. at 8–9.

Plaintiff contends Defendants Smith and Redmon, acting in a conspiracy with others, kept him sequestered in solitary confinement by falsifying statements on legal documents and refusing to take him to an initial classification committee hearing. See id. at 9. Plaintiff contends this was done to prevent him from being heard on his risk placement claim and to place him in the enemies' yard. See id. As a result, Plaintiff claims he was threatened by gang members and associates who contaminated his meals. See id. at 10.

As a result of this policy, Plaintiff alleges deliberate indifference to prison conditions against Defendants Newsom and Diaz. See id. Plaintiff asserts Defendants Newsom and Diaz knowingly failed to supervise CSPC employees and their creation of illegitimate prison rules. See id. at 10. Plaintiff claims their deliberate indifference caused him to suffer two assaults by CDCR authorities, on June 12, 2019, and November 5, 2021. See id.

Similarly, Plaintiff alleges Defendant Allison knowingly permitted this harm by enforcing the policy. See id. at 6–7. Plaintiff claims Defendant Allison's actions led to the use of unnecessary force and sexual assault by Defendants Quezada and Flores on November 5, 2021. See id. at 7. Plaintiff further claims Defendant Allison's actions led to a wrongful charge via Rules Violation Report (RVR) 115 and increased prison time despite knowing the risk to Plaintiff. See id. at 12.

Plaintiff also alleges Defendant Seibel knowingly and with malice failed to protect him

from the use of unsupervised authority, causing injury, including the two assaults by CDCR employees on June 12, 2019, and November 5, 2021. See id.

Plaintiff alleges Defendant Smith injured him by engaging in a conspiracy with the DRB to falsely imprison him for over 30 days and place him in a risk yard by falsifying documents. See id. at 13. Plaintiff contends this in turn led to his continued false imprisonment at Kern Valley State Prison under an indefinite Secured Housing Unit (SHU) term for a crime of which he was falsely accused. See id.

Plaintiff further alleges Defendants Redmon and Duran similarly participated in the conspiracy to harm him. See id. at 15, 17. Plaintiff asserts that he asked Defendant Redmon to take him to the Institutional Classification Committee (ICC) to request protection, but Defendant Redmon ignored these requests. See id. at 14. Plaintiff contends no safety concerns were granted, and enemies were housed together. See id. Plaintiff similarly alleges Defendant Redmon falsified legal documents to deny him a classification hearing within 10 days of his arrival at Kern Valley. See id. Plaintiff claims this resulted in his continued false imprisonment. See id.

Plaintiff asserts that Defendant Duran similarly ignored his requests for protection and falsified legal documents to deny his classification. See id. at 16. Plaintiff further claims that Defendant Duran harassed him by instigating other prisoners to commit violence against him. See id.

In his second claim, Plaintiff alleges that the use of excessive force violated his Eighth Amendment right to be free from cruel and unusual punishment. See id. at 18. Plaintiff alleges that on November 5, 2021, Defendant Quezada disrespected him by calling him various names. See id. Plaintiff further alleges that later that day, Defendant Quezada provided him a contaminated dinner tray and ignored requests for a new tray. See id. Plaintiff asserts he then pushed the tray out of the cell door. See id. at 19. After this, Plaintiff contends Defendant Quezada falsely claimed Plaintiff had assaulted staff to get the cell door open so he could harm Plaintiff. See id.

Plaintiff claims Defendants Quezada and Flores entered his cell and assaulted him. See id. Plaintiff asserts Defendant Quezada kicked his kneecap while Plaintiff placed his hand on

Quezada's chest to defend against the assault. See id. Plaintiff contends he then lay prone facing the floor with his hands on his back and feet crossed, showing no resistance or provocation. See id. at 19. Plaintiff claims Defendant Quezada then moved on top of his body, placed him in a chokehold, and performed a sexual act on his backside. See id. Plaintiff alleges Defendant Quezada proceeded to lie on him and then stood on his head for some time afterward. See id.

In his third claim, Plaintiff alleges deliberate indifference to his medical needs and conspiracy. See id. at 23. Plaintiff contends that on January 11, 2023, Defendant Omeyer arrived with a psychiatrist's complaint pursuant to Penal Code § 2604 / CDCR Form 7701. See id. Plaintiff asserts Defendant Omeyer then returned on January 13, 2023, to conduct an improvised mental health hearing without notice. See id. Plaintiff asserts that because he was not present at this improvised hearing, he was declared incompetent. See id. at 24. Plaintiff asserts Defendant Frost came to his cell to inform him that he had been declared incompetent and would be forced to take medication. See id. Because of these actions, Plaintiff claims Defendants Omeyer, Frost, and Deplar abused their authority under Defendant Smith and acted without his knowledge. See id.

Plaintiff further alleges that on January 16, 2023, Defendant Sao conducted a psychological exam, ignored all of Plaintiff's explanations for his symptoms, and placed him in the mental health system under Defendant Smith's orders. See id. at 25. Plaintiff then alleges that on January 17, 2023, Defendant Deplar threatened to inject him with a tranquilizer and force him to take psychiatric medications in retaliation for a Form 602 filed against her. See id. Plaintiff asserts Defendant Smith, Defendant John Doe (Chief ME), and Defendants Elias, Omeyer, Howard, Frost, Sao, and Deplar acted with deliberate indifference to keep him at risk and in an attempt to cover up the actions of the other defendants. See id. at 26. Plaintiff further asserts that these defendants ignored the reasons for his behavior and knowingly admitted him to the prison's psychiatric system through false assessments to harm him in retaliation for his complaints. See id. at 27.

## II. DISCUSSION

In their motion to dismiss, Defendants raise the following arguments:

• **Rule 8 Non-Compliance**: The first amended complaint fails to provide a short and plain statement of the claims.

• **Statute of Limitations**: Claims accruing before 2021 are time-barred.

• **Failure to State a Claim**: The allegations against high-ranking prison officials fail to state plausible claims for relief.

• **Qualified Immunity**: The high-ranking officials are entitled to qualified immunity.

• **Favorable Termination Doctrine**: The excessive force claims against Defendants Flores, Quezada, and Duran are barred under Heck v. Humphrey and Edwards v. Balisok.

• **Eleventh Amendment Bar**: Claims against Defendants in their official capacities are barred by sovereign immunity.

• **Governor Newsom's Dismissal**: Plaintiff fails to plead an exception to the Eleventh Amendment as to Defendant Newsom.

• **Lack of Standing**: Plaintiff lacks standing to seek injunctive relief.

• **Alternative Severance**: Alternatively, the matter should be severed into separate actions pursuant to Federal Rules of Civil Procedure 20 and 21.

See ECF No. 29 at 3 (Table of Contents).

Plaintiff's complaint is excessively long, out of chronological order, and fails to clearly articulate his intended claims. As an initial matter, the majority of Plaintiff's claims fail because he has not pleaded a short and plain statement of his case. Furthermore, Plaintiff alleges violations that fall outside the applicable statute of limitations and asserts claims against high-ranking officials with whom he never met or interacted. Finally, Plaintiff's excessive force claims against Defendants Flores, Quezada, and Duran are contradicted by his own complaint; his due process claims are cognizably deficient under 42 U.S.C. § 1983; and his claims against various defendants in their official capacities are legally barred.

1. Garces' claims fail under Rule 8 as he has not properly pled short and plain statements of the claims.

Federal Rule of Civil Procedure 8(a)(2) requires that a complaint contain "a short and

plain statement of the claim showing that the pleader is entitled to relief." Plaintiff's handwritten complaint is 44 pages long and totals over 300 pages including the attached exhibits and documents submitted to support his factual allegations. See ECF No. 13. This pleading method fails to satisfy Rule 8's mandate that claims be stated simply, concisely, and directly. See Fed. R. Civ. P. 8(d)(1). To the contrary, Plaintiff's complaint would require the Court to comb through hundreds of pages of external materials to decipher his claims, which are interwoven throughout a non-chronological narrative spanning approximately 15 years and multiple correctional facilities. The Court is not required to undertake this task; not only do limited judicial resources preclude it, but it is fundamentally the responsibility of the Plaintiff—not the Court—to formulate and clearly articulate his claims.

2. Garces' claims which rely on allegations prior to September 15, 2019, are barred by California's statutes of limitations.

For claims brought under 42 U.S.C. § 1983, the applicable statute of limitations is governed by the forum state's statute of limitations for personal injury actions. See Wallace v. Kato, 549 U.S. 384, 387–88 (2007); Jones v. Blanas, 393 F.3d 918, 927 (9th Cir. 2004) ("For actions under 42 U.S.C. § 1983, courts apply the forum state's statute of limitations for personal injury actions."); see also Jackson v. Barnes, 749 F.3d 755, 761 (9th Cir. 2014); Wilson v. Garcia, 471 U.S. 261, 280 (1985); Karim-Panahi v. Los Angeles Police Dep't, 839 F.2d 621, 627 (9th Cir. 1988). In California, a two-year statute of limitations applies to personal injury actions. See Cal. Civ. Proc. Code § 335.1; Maldonado v. Harris, 370 F.3d 945, 954 (9th Cir. 2004).

State tolling provisions also apply to § 1983 actions. See Hardin v. Straub, 490 U.S. 536, 543–44 (1989). California Civil Procedure Code § 352.1(a) provides for the tolling of the statute of limitations for up to two years if the plaintiff is, at the time the cause of action accrues, imprisoned on a criminal charge for a term less than for life. See Cal. Civ. Proc. Code § 352.1(a). This tolling provision applies to all inmates except those sentenced to life without the possibility

of parole. See Brooks v. Mercy Hosp., 1 Cal. App. 5th 1, 6–7 (2016) (holding that § 352.1(a) applies to prisoners serving a sentence of life with the possibility of parole, but excludes those sentenced to life without the possibility of parole). Thus, unless an inmate is serving a sentence of life without parole, an effective four-year limitations period applies.

Notwithstanding the application of state law regarding the limitations period and tolling, federal law governs when a § 1983 claim accrues. See Fink v. Shedler, 192 F.3d 911, 914 (9th Cir. 1999) (citing Elliott v. City of Union City, 25 F.3d 800, 801–02 (9th Cir. 1994)). "A claim accrues when the plaintiff knows, or should know, of the injury which is the basis of the cause of action." Id. (citing Kimes v. Stone, 84 F.3d 1121, 1128 (9th Cir. 1996)); see also TwoRivers v. Lewis, 174 F.3d 987, 991 (9th Cir. 1999).

Plaintiff filed his initial complaint on September 15, 2023. ECF No. 1. Accounting for the maximum two years of statutory tolling under § 352.1(a), any claims based on incidents occurring prior to September 15, 2019, are time-barred. Plaintiff does not allege any facts establishing a basis for equitable tolling, nor does he contend that he was unaware of his injuries when they occurred. See ECF No. 13. Accordingly, all claims arising from events prior to September 15, 2019, must be dismissed as time-barred.

3. Garces' claims against Defendant Governor Newsom, Defendant Ralph Diaz, Defendant Kathleen Allison, and Defendant K. Seibel fail because he does not allege specific individual actions by the Defendants which violated his constitutional rights, nor does he specifically allege the Defendants directed subordinates to take the actions which specifically injured him.

**a. The High-Ranking Defendants**

Plaintiff fails to allege that Defendants Newsom, Diaz, and Allison (collectively, the "High-Ranking Defendants") personally participated in any constitutional violation that caused him injury. See ECF No. 13 at 6–7, 9–10, 21–22, 25–26, 33–36, 40–43. To state a claim under 42 U.S.C. § 1983, a plaintiff must allege an actual connection or link between the actions of the named defendants and the alleged deprivations. See Monell v. Dep't of Soc. Servs., 436 U.S. 658,

690–92 (1978); Rizzo v. Goode, 423 U.S. 362, 370–71 (1976). "A person 'subjects' another to the deprivation of a constitutional right, within the meaning of § 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978). Vague and conclusory allegations concerning the involvement of official personnel in civil rights violations are insufficient. See Ivey v. Bd. of Regents, 673 F.2d 266, 268 (9th Cir. 1982). Rather, a plaintiff must set forth specific facts as to each individual defendant's causal role in the alleged constitutional deprivation. See Leer v. Murphy, 844 F.2d 628, 634 (9th Cir. 1988).

Here, Plaintiff provides only vague and conclusory allegations as to how the High-Ranking Defendants violated his constitutional rights. ECF No. 13 at 6–8. Plaintiff complains that "Gaving Newson [sic] and Ralph M. Diaz (prison's secretary) had created an INTEGRATION OF PRISONERS." Id. Similarly, Plaintiff claims that "Kathleen Allison was the prison's Director whos [sic] enforced Gaving Newson's [sic] and Ralph M. Diaz unsupervised law given an order to all prison's wardens to act under this law/policy using force to enforce rules/custom." Id. Throughout the complaint, Plaintiff fails to indicate that any of the High-Ranking Defendants knew of him, personally violated his rights, or ordered any subordinates to take action regarding his placement or safety. Consequently, Plaintiff fails to meet the pleading standard with respect to the High-Ranking Defendants.

**b. Defendant K. Seibel**

Plaintiff fails to allege that Defendant K. Seibel knew of and disregarded a substantial risk to Plaintiff's personal safety when she chaired a hearing approving his transfer to Kern Valley State Prison. See ECF No. 13 at 7–8. Plaintiff again relies on his sweeping theory that the High-Ranking Defendants implemented a scheme putting him personally at risk, and that Defendant Seibel was merely tasked with carrying out this scheme. See id. Just as Plaintiff's claims against the High-Ranking Defendants fail to state a claim, his claim against Defendant Seibel fails to allege specific facts demonstrating her individual role in his alleged injuries.

///

4. Garces' claims against Smith, Redmon, Duran fail to state proper § 1983 claims.

Plaintiff alleges that Defendants Smith, Redmon, and Duran participated in a conspiracy and falsified documents to harm him. See ECF No. 13 at 10–14. Although Plaintiff's complaint is excessively long and difficult to parse, he appears to allege a due process violation. Id.

Where a prisoner alleges the deprivation of a liberty or property interest caused by the random and unauthorized action of a prison official, there is no cognizable claim under 42 U.S.C. § 1983 if the state provides an adequate post-deprivation remedy. See Zinermon v. Burch, 494 U.S. 113, 129–32 (1990); Hudson v. Palmer, 468 U.S. 517, 533 (1984). A state's post-deprivation remedy may be adequate even if it does not provide relief identical to that available under § 1983. See Hudson, 468 U.S. at 531 n.11. Plaintiff's complaint attaches numerous Rules Violation Reports detailing inmate grievance processes, which demonstrates his consistent use of this system over many years. See ECF No. 13. The Court finds that to the extent Plaintiff attempts to assert due process claims, California provides an adequate post-deprivation administrative remedy to be heard. Accordingly, these claims must be dismissed.

5. Plaintiff Fails to State Plausible Excessive Force Claims Against Defendants Flores, Quezada, and Duran.

Plaintiff attaches several institutional reports from officers who responded to the incident on November 5, 2021—an event that constitutes a significant portion of the First Amended Complaint. See ECF No. 13. In evaluating a complaint for sufficiency under a motion to dismiss, the Court may consider documents whose contents are alleged in or attached to the complaint and whose authenticity no party questions. See Branch v. Tunnell, 14 F.3d 449, 454 (9th Cir. 1994).

When prison officials are accused of using excessive force, the core judicial inquiry is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Hudson v. McMillian, 503 U.S. 1, 6–7 (1992); Whitley v. Albers, 475 U.S. 312, 320–21 (1986). The "malicious and sadistic" standard, as opposed to the "deliberate indifference" standard applicable to general conditions-of-confinement claims, applies because prison officials must act decisively in the face of an immediate risk of injury to inmates or staff. See Whitley, 475 U.S. at 320–21. In determining whether force was excessive, the Court

considers: (1) the need for the application of force; (2) the extent of the injury inflicted; (3) the relationship between the need for force and the amount of force used; (4) the nature of the threat reasonably perceived by the officers; and (5) any efforts made to temper the severity of a forceful response. See Hudson, 503 U.S. at 7. The absence of an emergency is probative of whether force was applied maliciously or sadistically. See Jordan v. Gardner, 986 F.2d 1521, 1528 (9th Cir. 1993) (en banc). Finally, because the use of force directly impacts a prison's legitimate penological interest in maintaining security, courts must afford wide-ranging deference to the execution of policies and practices by prison officials. See Whitley, 475 U.S. at 321–22.

Here, the institutional records attached to Plaintiff's own complaint directly contradict his claims of an unprovoked assault. Defendant Officer Quezada's report indicates that Plaintiff became violent and agitated while being served meals, throwing his food tray underneath the cell door, striking Officer Quezada, and splashing him with an unknown liquid. See ECF No. 13 at 111. When Defendant Officers Flores and Quezada ordered Plaintiff to submit to handcuffs, Plaintiff refused, stating, "fuck you, I am not going anywhere." Id. Plaintiff then assumed an aggressive stance and rushed toward Officer Quezada, pulling him into the cell. Id. Officers used physical force to subdue Plaintiff, after which they immediately relinquished control of him to a supervisor for escort. Id. at 112. These attached reports document an emergency where Plaintiff's aggressive, non-compliant behavior placed officers in danger. Because the attached exhibits demonstrate a measured, good-faith application of force to restore discipline rather than a malicious intent to cause harm, Plaintiff fails to state a plausible Eighth Amendment claim. See Hudson, 503 U.S. at 6–7; Whitley, 475 U.S. at 320–21.

6. Claims Against Defendants in Their Official Capacities Are Barred by the Eleventh Amendment.

Plaintiff's claims against Defendants in their official capacities cannot be sustained. The Eleventh Amendment prohibits federal courts from hearing suits brought against a state by its own citizens or by citizens of other states. See Brooks v. Sulphur Springs Valley Elec. Coop., 951 F.2d 1050, 1053 (9th Cir. 1991). This sovereign immunity extends to suits against state agencies,

including state departments responsible for the incarceration and correction of prisoners. See Alabama v. Pugh, 438 U.S. 781, 782 (1978) (per curiam); Lucas v. Dep't of Corr., 66 F.3d 245, 248 (9th Cir. 1995) (per curiam); Hale v. Arizona, 993 F.2d 1387, 1398–99 (9th Cir. 1993) (en banc), abrogated on other grounds by Walden v. Nevada, 945 F.3d 1088, 1098 n.2 (9th Cir. 2019).

The Eleventh Amendment similarly bars actions seeking monetary damages from state officials acting in their official capacities. See Eaglesmith v. Ward, 73 F.3d 857, 859 (9th Cir. 1995); Pena v. Gardner, 976 F.2d 469, 472 (9th Cir. 1992) (per curiam). It does not, however, bar suits against state officials in their personal capacities. Plaintiff's lengthy, unstructured complaint leaves the Court to guess whether he intended to sue certain defendants in their official or individual capacities. However, to the extent Plaintiff attempts to sue any Defendant in their official capacity for damages, those claims are legally barred and must be dismissed.

7. Plaintiff's Claims Against Defendant Medical Officers May Proceed Upon Amendment.

Although Plaintiff may be able to assert plausible Eighth Amendment claims against the named medical officers, this portion of the complaint fails to provide a short and plain statement of the claim as required by Federal Rule of Civil Procedure 8(a)(2). As previously noted, the Court cannot parse through a 312-page pleading to decipher how each medical defendant allegedly violated Plaintiff's rights. Plaintiff states that "Dr. Deplar" threatened to inject him with a tranquilizer and force him to take psychiatric medication. See ECF No. 13. He also asserts that unspecified medical officers knowingly admitted him to the prison's psychiatric system through false assessments to harm him in retaliation for filing grievances. Id. While these allegations touch upon potentially cognizable claims, they are entirely disorganized. Accordingly, these claims are dismissed with leave to amend so that Plaintiff may provide a clear, concise statement of his medical deliberate indifference claims.

## III. CONCLUSION

Based on the foregoing, the undersigned orders and recommends as follows:

1. It is ORDERED that the Clerk of the Court randomly assign a District Judge to this case.

2. It is RECOMMENDED that Defendants' motion to dismiss (ECF No. 29) be GRANTED as follows:

a. All claims against Defendants Newsom, Diaz, Allison, and Seibel be dismissed with prejudice because Plaintiff fails to allege that these Defendants personally participated in any constitutional violation;

b. Plaintiff's excessive force claims against Defendants Flores, Quezada, and Duran be dismissed with prejudice for failure to state a plausible claim under 42 U.S.C. § 1983;

c. Plaintiff's due process claims against Defendants Smith, Redmon, and Duran be dismissed with prejudice as non-cognizable under 42 U.S.C. § 1983;

d. Plaintiff's claims against Defendants Sherman, Moak, and Vanenburg be dismissed with prejudice for failure to plead a "short and plain statement of the claim" pursuant to Federal Rule of Civil Procedure 8(a)(2); and

e. Plaintiff's claims against the medical defendants regarding his psychiatric treatment be dismissed without prejudice for failure to comply with the pleading requirements of Federal Rule of Civil Procedure 8(a)(2).

3. It is RECOMMENDED that Plaintiff be granted leave to file a Second Amended Complaint only as to his claims against the medical defendants, provided that the amended pleading complies with the short and plain statement standard of Rule 8.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within **14 days** after being served with these findings and recommendations, any party may file written objections with the court. Responses to objections shall be filed within **14 days** after service of objections. Failure to file objections within the specified time may waive the right to appeal. See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated: October 6, 2026

ILA C. DEISS
UNITED STATES MAGISTRATE JUDGE